IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN D. BAXTER,            :
                Plaintiff,  :
        v.                  :   Case No. 3:14-cv-126-KRG-KAP
PENNSYLVANIA DEPARTMENT OF  :
CORRECTIONS, *et al.*,      :
                Defendants  :

### Report and Recommendation

Recommendation

There are pending motions for summary judgment, plaintiff Baxter's at docket no. 29, and the remaining defendants' at docket no. 32. Summary judgment should be ordered for the defendants and the matter closed.

Report

Baxter is an inmate at S.C.I. Mercer. He filed a complaint in July 2014, docket no. 5, naming as the only defendant the Pennsylvania Department of Corrections. Baxter alleged that he is disabled as defined by the Americans with Disabilities Act, 42 U.S.C.§ 12101, et seq., and that on or about August 2012 he was removed from an auto mechanics vocational course at Mercer in violation of Title II of the ADA, which bars discrimination on the basis of disability in the provision of "services, programs, or activities of a public entity." 42 U.S.C.§ 12132. Baxter has back injuries and walks with a cane, and allegedly someone employed by the Pennsylvania Department of Corrections ordered that anyone who uses a cane must be excluded from the auto mechanics course. Baxter added that he could perform all the tasks required during

classroom instruction, and that he was required to use two flights of stairs to reach the classroom, even though allegedly there was a ramp that Baxter could use. Baxter claimed that the Pennsylvania Department of Corrections failed to enter into the interactive process required by the ADA to determine whether his disability could be accommodated and that the Pennsylvania Department of Corrections discriminated against him in violation of the ADA by refusing to provide him with a reasonable accommodation, namely allowing him to use a ramp to get to class instead of requiring him to use stairs. Baxter requested money damages in some detail but not for injunctive relief.

I screened the complaint and noted that federal courts are generally barred from exercising jurisdiction over states because of the Eleventh Amendment and, because there was a real question whether on the facts alleged 42 U.S.C.§ 12202 of the ADA validly abrogated Pennsylvania's immunity for money damages, see Tennessee v. Lane, 541 U.S. 509 (2004)(Title II of the ADA validly abrogates a state's immunity as applied to the class of cases implicating the fundamental right of access to the courts), compare Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001)(Title I of the ADA does not validly abrogate a state's immunity from claims of disability discrimination in employment) and United States v. Georgia, 546 U.S. 151, 159 (2006)(Title II of the ADA validly abrogates a state's immunity "for conduct that

2

*actually* violates the Fourteenth Amendment" (emphasis in original)), I recommended that Baxter amend his complaint to request relief other than money damages or to state a claim sufficient to support an award of damages.

Baxter filed an amended complaint, docket no. 7, naming the Pennsylvania Department of Corrections as a defendant, and adding as individual defendants six individual employees of the Pennsylvania Department of Corrections, two involved in the administration of the prison, two involved in the education programs, one the health care administrator, and one an unnamed employee involved in processing grievances. Although Baxter provided more detail about who had said what to him, alleged the steps he had taken to exhaust the Pennsylvania Department of Corrections grievance procedure prescribed by DC-ADM 804, included paragraphs about defendants acting under color of law and violations of the Fifth, Sixth, Eighth and Fourteenth Amendments, and invoked Section 504 of the Rehabilitation Act, 29 U.S.C.§ 794(a), as well as the ADA, the claim remained the same, namely that Baxter had been removed from the course because of his mobility issues. Baxter's prayer for relief again dwelt almost entirely on money damages.

I screened the amended complaint, and after liberally construing, see Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007), Baxter's prayer for

3

relief as requesting injunctive relief, ordered the complaint served only on the Pennsylvania Department of Corrections and the warden at Mercer. docket no. 8. Despite my recommendation that all the individual defendants be dismissed because there is no individual liability for damages under the ADA or Rehabilitation Act, see docket no. 8 at 2, somehow all the named defendants were served. They moved to dismiss on the basis that Baxter had failed to exhaust his administrative remedies, docket no. 18, a motion that Baxter opposed, docket no. 22.

I noted that there was a dispute of fact as to exhaustion, ordered a schedule for discovery, and gave the parties a date by which to file motions for summary judgment on exhaustion and other issues. docket no. 26. No one asked for additional time and both sides filed timely motions and briefs. The defendants' Appendix is at docket no. 35, docket no. 35-1, and docket no. 35-2.

I do not need to resolve which statute controls the exhaustion requirement because either way there is no claim for money damages under the ADA. First, under United States v. Georgia, there is no conduct by the Pennsylvania Department of Corrections that actually violates the Fourteenth Amendment or any of the rights under other amendments incorporated into the Due Process Clause of the Fourteenth Amendment. Baxter makes a cursory citation to the Fifth, Sixth and Eighth Amendments, but I am unable to fathom how the Fifth and Sixth Amendments could even be

4

relevant, and a claim that by removing Baxter from an auto mechanics program the Pennsylvania Department of Corrections somehow inflicted punishment in violation of the Eighth Amendment on him would be absurd.

The facts, taken in the light most favorable to the plaintiff, remain the same as they were in the original complaint: two months after Baxter enrolled in an auto mechanics course someone (determined to be the medical director at Mercer, Scott Morgan, M.D.) ordered Baxter removed from the class because of his medical condition. docket no. 35-1, Defendants' Appendix, Exhibit 8, Morgan Affidavit. Baxter alleges and Morgan concurs that Baxter has a long history of back injuries. Morgan had ordered a bottom bunk and bottom-tier cell assignment and a no-stairs restriction for Baxter. Id. As Baxter himself noted at the time in a communication to his instructor, defendant Girodano, "I know you have nothing to do with me not being allowed back in the class. It is a medical decision, because of my disability and the use of a cane." Defendants' Appendix, Exhibit 9. Nothing in Baxter's account implicates a fundamental right or suggests discrimination on the basis of any suspect classification. Leaving aside for the moment the scope of Title II's reach beyond conduct that actually violates the constitution and focusing only on potential constitutional violations, it is rational for a state not to allocate time and money to the classroom education of an inmate for

5

a vocation that he could not pursue beyond the classroom because of his disability.

For money damages to be awardable against a state under Title II of the ADA when the state's conduct violates Title II but not the Fourteenth Amendment, damages must be "a congruent and proportional means of preventing and remedying" the violation of Title II. See Bowers v. NCAA, 475 F.3d 524, 554-55 (3d Cir.2007)(A damages remedy under Title II against a state university for disability discrimination against a student athlete held ineligible for Division I scholarship athletics due to a learning disability is a congruent and proportional remedy.) There is no precedential authority after Bowers saying in what other contexts money damages might be a congruent and proportional remedy against a state. Although it pre-dated United States v. Georgia and Bowers v. NCAA, the most on-point interpretation of the interaction between the Eleventh Amendment and the ADA remains Cochran v. Pinchak, 401 F.3d 184, vacated, 412 F.3d 500 (3d Cir.2005), which concerned a blind inmate denied his cane and other assistive devices. As the Supreme Court directed in Garrett and Lane, the Cochran panel applied the three-part analysis of City of Boerne v. Flores, 521 U.S. 507 (1997), to determine whether money damages were appropriate: first the court must identify "with some precision" the scope of the constitutional right at issue; second, Congress must have identified a history and pattern of disability discrimination by

6

the States concerning that right; and third, the court must determine whether subjecting States to money damages is a proportionate response to the constitutional violation.

Here, as in <u>Cochran</u>, the relevant right is to be free from invidious discrimination under the Equal Protection Clause. More precisely, the right is of an inmate with a disability to vocational education programs. The Supreme Court has recognized that neither persons with disabilities nor inmates constitute a suspect class. Nor is receiving vocational training while incarcerated a fundamental right.

At the second step it is the case that, broadly speaking, Congress passed Title II in response to a history of disability discrimination, some of which was of constitutional dimension and some of which was not. A very broad description of the legislative history was good enough for the <u>Cochran</u> panel, but I believe that a court must identify the relevant history of discrimination at a lower level of abstraction than "administration of public services and programs generally."

<u>Cochran</u>'s use of <u>Lane</u> is misleading. The panel passed the second step with the assessment: "One area targeted by Title II is 'unequal treatment in the administration of ... the penal system." <u>Cochran v. Pinchak</u>, 401 F.3d at 191, <u>citing</u> <u>Tennessee v. Lane</u>, 541 U.S. at 525, 124 S.Ct. at 1989. In the cited passage from <u>Lane</u>, what the Court actually said was:

The historical experience that Title II reflects is also documented
in this Court's cases, which have identified unconstitutional
treatment of disabled persons by state agencies in a variety of
settings, including unjustified commitment, e.g., Jackson v.
Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); the
abuse and neglect of persons committed to state mental health
hospitals, Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73
L.Ed.2d 28 (1982); and irrational discrimination in zoning
decisions, Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432,
105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The decisions of other
courts, too, document a pattern of unequal treatment in the
administration of a wide range of public services, programs, and
activities, including **the penal system**, public education, and
voting.

Tennessee v. Lane, 541 U.S. at 524-25 (footnotes omitted). The

footnote elaborating on the reference to the penal system cited

three cases, one of a paraplegic inmate unable to access the

toilet, one of a double amputee inmate forced to crawl on the

floor, and one of a deaf inmate denied access to sex offender

therapy program required for parole. id., n.11. The first two fit

within United States v. Georgia's subsequent holding that actual

violations of the Eighth Amendment would support money damages, and

the last example implicates the fundamental right of access to

court discussed in Lane itself.

There is nothing in the legislative history, discussed

but ultimately determined by the Court to be irrelevant in

Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 211

(1998)(reference to legislative history was unnecessary when the

text of the statute is ambiguous), and nothing pointed out by the

parties that suggests remedying disability discrimination in

vocational programs for prison inmates (as opposed to persons

8

placed in large-scale residential institutions as a result of handicaps due to mental retardation or mental illness) was contemplated by Congress, or that in Title II of the ADA Congress was responding to a history of such discrimination against inmates, much less that Congress intended in Title II to give inmates a damages remedy that Title I would not give to corrections officers.

But assuming that Baxter gets past the second step of the City of Boerne analysis, at the final and dispositive step the Cochran panel found that since Title II of the ADA conflicted with the general ability of States to operate prisons so long as they complied with the Equal Protection Clause, to permit money damages against states for violations of Title II that were "rooted in" the Equal Protection Clause but not actual violations of the Equal Protection Clause would in effect re-write Fourteenth Amendment law. Cochran v. Pinchak, supra, 401 F.3d at 191, 193. That conclusion cannot be disputed. Baxter has no claim for money damages under the ADA. I note that the Supreme Court has not spoken on this issue. San Francisco v. Sheehan, 135 S.Ct. 1765, 1773 (2015) ("[W]e have never decided whether that [the proposition that a public entity can be held liable under the ADA for money damages for the actions of its employees] is correct, and we decline to do so here."

The standards used to determine whether the Rehabilitation Act has been violated are the same standards applied

9

under the ADA.  See e.g. Coleman v. Pennsylvania State Police, 561 Fed. Appx. 138, 143 (3d Cir.2014).  Likewise, the remedies under the two statutes are the same.  42 U.S.C.§ 12133; Barnes v. Gorman, 536 U.S. 181, 185 (2002)(holding punitive damages unavailable under Title II of the ADA and Section 504 of the Rehabilitation Act.)  The two statutes differ when applied to a public entity only in that the Rehabilitation Act is tied to the Spending Clause and the question of waiver of immunity must be addressed.

A state's waiver of immunity as a recipient of federal funds does not in the absence of a clear and unambiguous statement act as a waiver to damages.  Sossamon v. Texas, 563 U.S. 277, 285 (2011)(states do not waive immunity from suits for money damages under RLUIPA).  Under Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir.2002), cert. denied, 537 U.S. 1252 (2003), which survives Sossamon in part, Pennsylvania has waived immunity from Rehabilitation Act damages claims by an **employee.**

Pennsylvania's waiver of immunity to claims for money damages under the Rehabilitation Act can be found in Section 1003 of the Rehabilitation Act Amendments of 1986, 100 Stat. 1845, 42 U.S.C.§ 2000d-7, enacted in response to Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985)(Congress did not express intent to abrogate immunity of states from suits for retroactive monetary relief under Section 504 of the Rehabilitation Act).  That section provides:

(1) A State shall not be immune under the Eleventh Amendment ... from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance. (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

In the absence of authority to the contrary I will assume that the waiver also applies to an inmate's claims for damages under the Rehabilitation Act and therefore reach the question whether there is a genuine factual dispute as to any issue involving Baxter's termination from the auto mechanics course.

It is uncontested that Baxter has disabilities, especially mobility issues related to his back injuries. It is uncontested that Morgan had found, months before Baxter enrolled in the auto mechanics course, that Baxter's condition prevented Baxter from being assigned to a top-tier cell and from sleeping in a top bunk, and that Morgan also found that Baxter's "medical restrictions prevent[] him from traversing stairs." Defendants' Appendix Exhibit 8. Although Morgan's language is not precise – after all, Baxter did climb stairs while enrolled – it is obvious what Morgan means, namely that climbing stairs was not compatible with Baxter's disabilities.

This is not in reasonable dispute: the defendants assert and Baxter does not deny that while Baxter was attending the auto

11

mechanics class, he was also presenting himself to the infirmary for treatment of severe back pain. For just three examples, see Defendants' Appendix Exhibit 7 Medical Notes for August 8, 2012 "lower back pain," "back spasm;" Notes for July 23, 2012 "my back hurts," "requesting Toradol again for back pain;" Notes for July 2, 2012 "severe back pain."

Baxter's response (presented most clearly in his amended complaint, docket no. 7, at ¶30-32, ¶43) to defendants' arguments is two-fold: he successfully attended class for two months, and if his ability to get to class is the concern, the Pennsylvania Department of Corrections has the duty to provide him with an accommodation.

Baxter's first point is not in dispute, but it is not legally material. The issues in this case would be identical if the Pennsylvania Department of Corrections had screened the applicants for the course before it began and Morgan had ordered Baxter not to attend the class on its very first day, as opposed to removing Baxter after he began. That Morgan was not aware of an inmate's educational program or that the employees in the education department were not aware of the medical restrictions on Baxter does not create an estoppel in Baxter's favor. To the extent that Baxter's participation in the class was not merely the result of delay in information about Baxter's class getting back to Dr. Morgan and information from Dr. Morgan getting back to the

education department, it may permit an inference that the Pennsylvania Department of Corrections respects the privacy of inmate health information, but not the inference that its employees have some sort of animus against the disabled inmate.

As for Baxter's second point, reasonable accommodations are those specific changes that, in the employment context, would allow the employee to perform the essential functions of a job without requiring an employer to modify its essential character. See Coleman v. Pennsylvania State Police, 561 Fed.Appx. at 146. Baxter is not an employee, but applying the reasonable accommodation requirement to a programs and services claim, see Wisconsin Community Services, Inc. v. Milwaukee, 465 F.3d 737, 754 (7th Cir.2006)(en banc) a plaintiff in general must prove that 1) but for his disability he would have been able to access the program or service; and 2) the accommodation necessary for access must be reasonable.

There is no reasonable dispute that but for his disability - or medical condition, the two are equivalent here - Baxter would not have been removed from the classroom portion of the course. Defendants' Appendix, Exhibit 10 touches on the subject whether Baxter was a qualified individual: Kimberly Boal's August 4, 2012 email indicates that eligibility for the course might have been determined by whether the attendees would ultimately be able to do the job of an auto mechanic, but whether

Baxter could ever seek employment as a mechanic or even complete an auto mechanics course given his medical condition is not a matter briefed by either side. For purposes of this motion both sides have accepted Baxter's framing of the issue, that the relevant program is the classroom section of the course.

On the other hand, there is likewise no dispute that a reasonable accommodation was offered: the defendants assert without contradiction from Baxter that when employees at the Pennsylvania Department of Corrections offered to find an auto mechanics course at another prison that would not require climbing stairs, Baxter declined the offer. See Defendants' Exhibit 11, Kimberly Boal's September 17, 2012 email. Baxter has consistently maintained that the Pennsylvania Department of Corrections could have allowed him an alternate route to and from class, but even if that were also reasonable in light of security concerns (also a matter not addressed by either side) the statute's requirement (as glossed by the courts to apply outside its primary applicability to employment) is reasonable accommodation, not the plaintiff's requested accommodation.

Summary judgment should be entered for the defendants and the matter ended.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to file written objections to this Report and Recommendation.

DATE: 7 March 2016

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Brian D. Baxter GK-9465
S.C.I. Mercer
801 Butler Pike
Mercer, PA 16137